United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jarmal Williamson,<br>Movant<br><br>v.<br><br>United States of America,<br>Respondent. | )<br>)<br>)<br>)  Civil Action No. 24-20140-Scola<br>)  Crim. Action No. 19-20144-Scola<br>)<br>) |

### Order

Before the Court is Movant Jarmal Willamson's motion to vacate sentence under 28 U.S.C. § 2255 (ECF No. 1)[1] docketed on January 11, 2024. The Court has considered the motion, Movant's memorandum of law (ECF No. 1-1), the Government's response (ECF No. 5), the entire record, and is otherwise fully advised. For the reasons explained below, the motion is denied.

**1. Background**

Movant was charged by superseding indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). (*See* Superseding Indictment CR ECF No. 21 at 1–3). Movant proceeded to trial where, on August 14, 2019, a jury found Movant guilty of Count 1 and acquitted him of Counts 2 and 3. (*See* Verdict CR ECF No. 66).

During Movant's sentencing hearing, the Court found that Movant "ha[d] at least three prior convictions for [a] serious drug offense committed on different occasions as set forth in cases F17-15853, F17-22014A, and F18-9759[.]" (Sentencing Tr. CR ECF No. 94 at 4; *see also* Presentence Investigation Report ("PSI") CR ECF No. 79 ¶ 25). Based on these predicate convictions, the

---

[1] Citations to (ECF) refer to docket entries in case number 24-20140-CIV-Scola, and citations to (CR ECF) refer to docket entries in criminal case number 19-20144-CR-Scola.

Court concluded that Movant qualified to be sentenced as an armed career criminal under 18 U.S.C. § 924(e) and was subject to a fifteen-year mandatory minimum sentence. (*See* at 3–4). The Court adjudicated Movant guilty of Count 1 and sentenced him to 188 months. (*See* Judgment CR ECF No. 85 at 1–2).

Movant appealed his conviction and sentence to the Eleventh Circuit. Movant raised three issues on appeal: (1) the Court erred in overruling Movant's *Batson v. Kentucky*, 476 U.S. 79 (1986) challenge during jury selection; (2) the Court violated Fed. R. Evid. 403 "by precluding [Movant] from cross-examining the Government's 'street slang' expert regarding his interpretation of the jail call without opening the door to highly prejudicial evidence"; and (3) the Armed Career Criminal Act's ("ACCA") fifteen-year mandatory minimum violated the Eighth Amendment as applied to Movant, "a young, non-violent offender with under one year of prison time." *United States v. Williamson*, 2022 WL 68623, at *1 (11th Cir. Jan. 7, 2022), *cert. denied*, 143 S. Ct. 625 (2023). The Eleventh Circuit rejected all of Movant's arguments and affirmed the conviction. *See id.* at *8. Movant filed a petition for writ of certiorari in the U.S. Supreme Court, but the Court denied the petition on January 9, 2023. *See Williamson*, 143 S. Ct. at 625.

Movant filed the instant Motion on January 5, 2024. (*See* Mot. at 13).[2] The Government concedes that the Motion is timely. (*See* Resp. at 4).

**2. Legal Standard**

**A. Section 2255 Motions**

Under § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under §

---

[2] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (cleaned up).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687–88.

To establish deficient performance, the movant must show that "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. The court's

review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (cleaned up).

To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a movant pleads guilty, prejudice cannot be shown unless "there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See* 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

**3. Discussion**

**A. Exhaustion and Procedural Default**

Movant raises two grounds for relief in his motion to vacate. *See* Mot. at 4–6. The Government suggests that the Court need not reach the merits of either since Movant failed to raise these issues on direct appeal. *See* Resp. at 5, 11. "Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" *McKay*, 657 F.3d at 1196 (quoting *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)). A procedural default will only be excused if: (1) there is "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error" or (2) the movant "is actually innocent . . . of the crime of conviction." *Id.* (internal quotation marks omitted).

Movant concedes that he did not raise the substance of Grounds One and Two on direct appeal. *See* Mot. at 4, 6. However, he appears to allege that the Court should excuse this default because counsel was ineffective for failing

to raise these issues. *See* Memo. at 11–12. Ineffective assistance of counsel can constitute "cause" to excuse a procedural default, but only if counsel's failure to raise the issue on direct appeal meets the *Strickland* standard for ineffectiveness. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Guyton v. United States*, 447 F. App'x 136, 140 (11th Cir. 2011). However, as the Government points out, counsel would have been ineffective only if Movant's underlying claims have merit. *See* Resp. at 14–15 (quoting *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015)).[3] Under these circumstances, and in the interest of judicial economy, the Court will simply "skip over" the procedural default issue and adjudicate the Motion solely on its merits. *See Dallas v. Warden*, 964 F.3d 1285, 1298 (11th Cir. 2020).

### B. Ground One

In Ground One, Movant alleges that his prior state-court convictions "cannot serve as ACCA predicate[s]" because Florida's drug schedules regarding cocaine and heroine are "more in depth than the federal definition making the Florida statute overbroad." Mot. at 4. In his Memorandum of Law, Movant cites the Eleventh Circuit's decision in *Chamu v. United States Attorney General*, 23 F.4th 1325 (11th Cir. 2022) as proof that Florida's drug possession statutes "governs isomers not punish[ed] under [the] federal definition." Memo. at 5. The Government responds that Movant "has not put forth any evidence to prove that there is a cocaine stereoisomer that falls outside of the federal definition of a serious drug offense." Resp. at 10. The Court agrees.

The ACCA "mandates a fifteen-year minimum sentence" for any defendant who violates 18 U.S.C. § 922(g) and who has previously been convicted of at least three "violent felonies" or "serious drug offenses." *United States v. Jackson*, 55 F.4th 846, 849 (11th Cir. 2022). In determining whether

---

[3] The Government contends that Movant is attempting to bring a free-standing claim of ineffective-assistance-of-counsel rather than using it as "cause" for Movant's procedural default. *See* Resp. at 13–15. Although the Court disagrees, this issue is irrelevant since counsel would not be ineffective for failing to make the same meritless arguments Movant raises in the instant Motion. *See Denson*, 804 F.3d at 1342.

a state conviction qualifies as a "serious drug offense," the court looks to "the statutory definition of the state offense at issue" to determine if it is "categorically broader" than ACCA's definition of a "serious drug offense"—i.e., "if there is conduct that would violate the state law but fall out-side of ACCA's 'serious drug offense' definition, the state law cannot serve as a predicate offense[.]" *Id.* at 850. ACCA's definition of a "serious drug offense" incorporates "the version of the federal controlled-substances schedules in effect when the defendant was convicted of the prior state drug offense." *Id.* at 854.

The Court found that Movant had been convicted of violating Florida Statute § 893.13(1) on three separate occasions: (1) possession with intent to sell cocaine and possession with intent to sell heroin on August 9, 2017, in Case No. F17-15853; (2) possession with intent to sell cocaine on November 17, 2017, in Case No. F17-22014; and (3) possession with intent to sell cocaine on May 11, 2018, in Case No. F18-9759. (*See* PSI CR ECF No. 79 ¶¶ 31–33). The Eleventh Circuit has held that Fla. Stat. § 893.13(1) should be considered "serious drug offense" so long as it did not criminalize more conduct than ACCA did at the time of the defendant's state-court convictions. *See Jackson*, 55 F.4th at 861. Movant fails to show that Fla. Stat. § 893.13(1) was overbroad at the time of his convictions.

First, Movant's conclusory allegation that Fla. Stat. § 893.13 defined heroin more broadly than federal law is simply wrong. *See* Mot. at 4. On August 9, 2017, the day Movant possessed heroin with the intent to sell it, both Florida and federal law forbid the sale of heroin and did not define it differently. *Compare* Fla. Stat. § 893.03(1)(b)(11) (2017), *with* 21 U.S.C. § 812, Schedule I(b)(10) (2017). Since there is "no mismatch between the Florida and federal definitions" of heroin, Movant's conviction for possessing heroin with intent to sell was properly considered a "serious drug offense." *United States v. Laines*, 69 F.4th 1221, 1236 (11th Cir. 2023).

Second, Movant fails to show that Fla. Stat. § 893.13 covers an existing cocaine compound that is outside the scope of the federal drug schedules.

Movant is correct that the Florida's definition of cocaine differs from the federal definition. *See* Memo. at 5–6. Florida law "defines 'cocaine' as '[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine' . . . [whereas] federal law controls 'cocaine, its salts, optical and geometric isomers, and salts of isomers.'" *Laines*, 69 F.4th at 1236 (first quoting Fla. Stat. § 893.03(2)(a)(4); and then quoting 21 U.S.C. § 812, Schedule II(a)(4)).[4] Put another way, Florida law prohibits the possession of all stereoisomers of cocaine, whereas federal law only regulates optical and geometric isomers—which is not exclusive of every possible stereoisomer. *See id.* (citing *United States v. Phifer*, 909 F.3d 372, 377 n.5 (11th Cir. 2018)). Movant argues that this difference means that Fla. Stat. § 893.13(1), at least in terms of cocaine, is categorically overbroad when compared to federal law. *See* Memo. at 6.

Movant says that his position is consistent with the Eleventh Circuit's holding in *Chamu*. *See* Memo. at 4. But *Chamu* stands for the opposite. The appellant in *Chamu*, just like Movant, claimed that Fla. Stat. § 893.13 "defines cocaine too broadly" because it covers "a subcategory of cocaine isomers" the federal statute does not—specifically "nongeometric diastereomers." 23 F.4th at 1329–31. The Eleventh Circuit held that, even though Florida's definition of cocaine is hypothetically "broader than the federal definition," the Florida statute does encompass additional controlled substances because there is no evidence that cocaine has a nongeometric diastereomer. *See id.* at 1331–32; *see also Laines*, 69 F.4th at 1234 ("Chamu failed to establish that cocaine has stereoisomers other than those covered by federal law. Indeed, we stated that we 'seriously doubted' that 'Chamu's assertions had any scientific basis.'") (internal citation omitted) (quoting *Chamu*, 23 F.4th at 1331–32). Movant merely repeats the same (unsuccessful) arguments from *Chamu* and *Laines* and fails to prove that there is an stereoisomer of cocaine that exists which is criminalized under Florida law but is legal under federal law. *See* Memo. at 4–

---

[4] These definitions are the same now as they were when Movant's offenses occurred.

6; *see also Chamu*, 23 F.4th at 1330 ("The federal statute indeed omits a subcategory of cocaine isomers that the state statute does not. But that omission is meaningless if the subcategory is a null set—if so, the state statute covers exactly the same substances as the federal.").[5]

Accordingly, the Court denies Ground One as meritless.

**C. Ground Two**

In Ground Two, Movant argues that his arrest violated the Fourth Amendment "because there was no probable cause for an arrest." Mot. at 5. Movant alleges that Officer Pinckney's belief that he had seen Movant conduct a hand-to-hand drug transaction was not sufficient probable cause to "seize" Movant by approaching him with a drawn weapon. *See* Memo. at 7–8. The Government responds that Officer Pinckney was merely showing his authority to conduct a temporary seizure, and that an arrest did not occur until after Movant was apprehended after a brief chase. *See* Resp. at 12–13.

Movant's argument is based on the mistaken premise that he was arrested or seized the moment Officer Pinckney approached him. The record is clear that "Officer Pinckney observed Defendant engage in what appeared to him to be a hand-to-hand drug transaction with an occupant of another vehicle. When the Officer stopped and exited his car to intervene in the transaction, Williamson tried to run away." *United States v. Williamson*, 2019 WL 4418608, at *1 (S.D. Fla. July 11, 2019) (Torres, Mag. J.). Officer Pinckney had the authority to approach Movant and conduct an investigatory stop based on his "reasonable suspicion" that Movant had just participated in a drug transaction; "probable cause" was not required. *See United States v. Lopez-Garcia*, 565 F.3d 1306, 1313–14 (11th Cir. 2009); *United States v. Tiller*, 2023

---

[5] Between September 11, 2015, and July 1, 2017, a Fla. Stat. § 893.13 conviction for possession with intent to sell cocaine may not have been a serious drug offense because a substance known as "ioflupane" was a controlled substance under Florida law but not under federal law. *See Jackson*, 55 F.4th at 851; *see also Leonard v. United States*, 2023 WL 2456042, at *5 (S.D. Fla. Mar. 10, 2023) (Ruiz, J.) (describing history of ioflupane as a controlled substance). However, since all of Movant's relevant drug offenses took place after July 1, 2017, Fla. Stat. § 893.13 is not categorically overbroad as applied to him. *See Jackson*, 55 F.4th at 861.

WL 9002866, at *5 (11th Cir. Dec. 28, 2023). That reasonable suspicion became probable cause once Movant fled and Officer Pinckney observed Movant discard what appeared to be a firearm and narcotics. *See United States v. Smith*, 481 F. App'x 540, 543–44 (11th Cir. 2012)

    The fact Officer Pinckney drew his gun to effectuate the investigatory stop did not transform the encounter into an arrest. The Eleventh Circuit has repeatedly held that "an officer's display of weapons does not necessarily convert an investigatory stop into an arrest." *United States v. Roper*, 702 F.2d 984, 987 (11th Cir. 1983); *see also Courson v. McMillian*, 939 F.2d 1479, 1496 (11th Cir. 1991) ("In the middle of the night, it is not unusual for a law enforcement officer to have his weapon drawn, when approaching individuals suspected of drug involvement."). Moreover, Movant's decision to immediately flee after Officer Pinckney's "show of authority" meant that he was not "seized" for Fourth Amendment purposes when Officer Pinckney first approached Movant with a drawn firearm. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."); *United States v. Dolomon*, 569 F. App'x 889, 893 (11th Cir. 2014) ("Nor did Dolomon actually submit to the officers' show of authority at the traffic light; instead, he fled. The attempted seizure at the traffic stop was only an attempted seizure. . . . And because he discarded the firearm before he was actually seized, thereby abandoning it, the firearm was not suppressible as the fruit of an unconstitutional seizure.").

    Officer Pinckney did not need probable cause to approach Movant with a drawn weapon because he reasonably suspected that Movant had just completed a drug transaction. By the time Movant was actually arrested, Officer Pinckney had developed probable cause from Movant's flight and his behavior during the chase. For the foregoing reasons, the Court denies Ground Two.

### 4. Evidentiary Hearing

A district court is not required to hold an evidentiary hearing where a movant's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. *See Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002). The Court finds the Movant's claims to be meritless. *See* 28 U.S.C. § 2255(b). Therefore, any request for an evidentiary hearing is denied.

### 5. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying her petition for writ of habeas corpus has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). Here, the Movant fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, upon consideration of the record, the Court denies the issuance of a certificate of appealability.

### 6. Conclusion

Accordingly, it is **ordered and adjudged** as follows:

1. Movant Jarmal Williamson's motion to vacate sentence under 28 U.S.C. § 2255 **(ECF No. 1)** is **denied**.
2. A certificate of appealability is **denied**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and Movant is not entitled to appeal *in forma pauperis*.
3. To the extent not otherwise disposed of, any pending motions are **denied as moot** and all deadlines are **terminated**.
4. The Clerk of Court is directed to **close** this case.

**Done and ordered**, in chambers, in Miami, Florida, on March 29, 2024.

_____
Robert N. Scola, Jr.
United States District Judge

*Copies, via U.S. Mail, to*
Jarmal Williamson
18055-104
Coleman Medium
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1032
Coleman, FL 33521
PRO SE